Stephen R. Smerek (SBN: 208343)
ssmerek@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615- 1735
Facsimile: (213) 615-1750

Attorneys for Defendant
MONSANTO COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIS MIRZAIE, EDISON MIRZAIE, and ROMI MIRZAIE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>Defendant. | Case No.  2:15-cv-04361 DDP (FFMx)<br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date: July 20, 2015<br>Time: 10:00 a.m.<br>Ctrm.: 3 - 2nd Floor<br>Judge: Hon. Dean D. Pregerson |

*Winston & Strawn LLP*
*333 S. Grand Avenue*
*Los Angeles, CA 90071-1543*

PLEASE TAKE NOTICE that on July 20, 2015 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Dean D. Pregerson in Courtroom 3 of the above-entitled Court, located at 312 N. Spring Street, Rm. G-8, Los Angeles, California 90012, Defendant Monsanto Company will and hereby does move for an order dismissing with prejudice Plaintiffs' Elvis Mirzaie, Edison Mirzaie, and Romi Mirzaie ("Plaintiffs") Complaint.

This Court should dismiss Plaintiffs' Complaint with prejudice for several independent reasons, including that (1) Plaintiffs' request for an injunction is expressly preempted by federal law; (2) Plaintiffs cannot recover damages under Cal. Bus. Prof. Code § 17500; (3) Plaintiffs do not plead an injury in fact, and therefore do not have standing; and (4) Plaintiffs fail to state a "claim to relief that is plausible on its face."  For all of these reasons, the Complaint falls far short of stating any plausible claim for relief.

This Motion to Dismiss is based on the Complaint, this Notice of Motion and Motion to Dismiss, the supporting Memorandum of Points and Authorities, on other matters of which this Court may judicially notice, on the records on file with the Court, and on any further evidence and argument that may be presented at the hearing of this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on June 8, 2015.

Dated:  June 15, 2015

WINSTON & STRAWN LLP

By:  /s/ *Stephen R. Smerek*
Stephen R. Smerek

Attorneys for Defendant
MONSANTO COMPANY

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND .......................................................................... 4

    A.    The Complaint ............................................................................ 4

    B.    The EPA's Oversight of Glyphosate And Its Marketing ............. 5

ARGUMENT ................................................................................................... 6

I.    PLAINTIFFS' CLAIM FOR AN INJUNCTION AGAINST THE EPA-APPROVED ROUNDUP® LABEL IS EXPRESSLY PREEMPTED BY FIFRA ............................................................ 6

    A.    FIFRA Expressly Precludes Any State Labeling Requirements That Are "In Addition To or Different" From FIFRA's ................................................................................ 7

    B.    Plaintiffs' Desired Injunction Would Impose A Labeling Requirement "In Addition To or Different" From EPA's Requirements Under FIFRA ............................................... 8

II.    THE DISTRICT COURT SHOULD EQUITABLY ABSTAIN FROM ENJOINING AN EPA-APPROVED PRODUCT LABEL ......... 10

III.    PLAINTIFFS' PUTATIVE "DAMAGES" CLAIM DOES NOT EXIST .................................................................................... 12

IV.    PLAINTIFFS LACK STANDING TO SUE UNDER THE FAL .......... 13

V.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................ 15

    A.    The Complaint Does Not Plausibly Allege That a Consumer is Likely to be Deceived By the EPA-Approved Roundup® Label ...................................................................... 15

    B.    The Complaint Fails to Plead Any Facts Suggesting that the Complained-Of Statement Would be a Material Factor in the Purchasing Decisions of a Significant Number of Reasonable Consumers ............................................... 19

CONCLUSION ............................................................................................. 20

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abiola v. ESA Mgmt., LLC*,
  2014 WL 988928 (N.D. Cal. Mar. 3, 2014) ......................................... 12

*Almasi v. Equilon Enterprises, LLC*,
  2012 WL 3945528 (N.D. Cal. Sept. 10, 2012) .................................... 13

*Alvarado v. Selma Convalescent Hosp.*,
  153 Cal. App. 4th 1292 (2007) .................................................. 1, 11

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2008) ....................................................... 17

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ................................................................. 7, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................... 2, 15

*Brod v. Sioux Honey*,
  927 F. Supp. 2d 811 (N.D. Cal. 2013) ...................................... 2, 19, 20

*Brown v. Allstate Ins. Co.*,
  17 F. Supp. 2d 1134 (S.D. Cal. 1998) .......................................... 12

*Chern v. Bank of Am.*,
  15 Cal. 3d 866 (1976). ........................................................ 2, 12

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) ............................................................ 13

*Coyle v. Hornell Brewing Co.*,
  2010 WL 2539386 (D.N.J. June 15, 2010) .................................... 11

*DJ Colman, Inc. v. Nufarm Americas, Inc.*,
  693 F. Supp. 2d 1055 (D.N.D. 2010) ............................................ 9

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
  885 F.2d 1392 (9th Cir. 1989) ................................................... 13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Etchevarry v. Tri-Ag Serv. Inc.*,
   993 P.2d 366 (Cal. 2000)..................................................................................7

*Ewing v. Superior Court of California*,
   2015 WL 1119407 (S.D. Cal. Mar. 11, 2015)...............................................18

*Figy v. Amy's Kitchen, Inc.*,
   2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ..............................................14

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .........................................................................16

*In re Sony Gaming Networks*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ..........................................................16

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009)...............................................................................20

*Jarvis v. JP Morgan Chase Bank, N.A.*,
   2010 WL 2927276 (C.D. Cal. July, 23, 2010) ...............................................6

*Johansson v. Cent. Garden & Pet Co.*,
   804 F. Supp. 2d 257 (D. N.J. 2011) .............................................................10

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014).......................................................14

*Kanter v. Warner-Lambert Co.*,
   99 Cal. App. 4th 780 (2002) .........................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*
   63 P.3d 937 (Cal. 2003)...............................................................................13

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011).................................................................2, 13, 14

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .........................................................2, 15, 16, 17

*Little Oil Co. v. Atlantic Richfield Co.*,
   852 F.2d 441 (9th Cir. 1988) .......................................................................12

*McCrary v. Elations Co.*,
   LLC, 2013 WL 6403073 (C.D. Cal. July, 12, 2013)......................................14

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

*Meaunrit v. The Pinnacle Foods Group, LLC*,
   2010 WL 1838715 (N.D. Cal. May 5, 2010)......................................................10

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ...............................................................................6

*Nathan Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) .......................................................................9, 12

*Reudy v. Clear Channel Outdoor, Inc.*,
   428 Fed. App'x 774 (9th Cir. 2011) ..................................................................11

*Samura v. Kaiser Foundation Health Plan, Inc.*,
   17 Cal. App. 4th 1284 (1993) ...........................................................................11

*Sandoz Pharm. Corp., Inc. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3d Cir. 1990) .............................................................................11

*Shamsian v. Dep't of Conservation*,
   136 Cal. App. 4th 621 (2006) ...........................................................................11

*Smith v. Hartz Mountain Corp.*,
   2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) ....................................................9

*Wilgus v. Hartz Mountain Corp.*,
   2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ......................................................9

STATUTES

7 U.S.C. § 136(p)(1) ...............................................................................................8

7 U.S.C. § 136(p)(2) ...............................................................................................8

7 U.S.C. § 136(q)(1)(A) .......................................................................................7, 9

7 U.S.C. § 136a(a) ...................................................................................................7

7 U.S.C. § 136c(c)(5) ..............................................................................................6

7 U.S.C. § 136v(b) ...........................................................................................1, 7, 8

28 U.S.C. §§ 1441 & 1332(d)..................................................................................4

Cal. Bus. & Prof. Code § 17200 .............................................................................9

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iv

Cal. Bus. & Prof Code §§ 17203-04 .................................................................. 13

Cal. Bus. & Prof. Code § 17500 .............................................................. passim

Cal. Bus. & Prof. Code § 17535 .......................................................... 12, 13

**OTHER AUTHORITIES**

40 C.F.R. § 136a(c)(5)(B) ............................................................................. 7

40 C.F.R. § 152.50 (2009) ............................................................................ 7

40 C.F.R. § 152.112(f) (2009) .................................................................. 6, 7

40 C.F.R. § 156.10(a)(5) (2009) ................................................................... 6

40 C.F.R. § 156.10(a)(5)(ii) (2009) .............................................................. 7

EPA Reg. No. 71995-33 ............................................................................... 6

Fed. R. Civ. P. 9(b) .............................................................................. 14, 19

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# <u>INTRODUCTION</u>

In this putative class action, Plaintiffs claim that the label on Monsanto's consumer Roundup® herbicide—***despite being reviewed and approved by federal regulators***—is "absolutely, positively false." Dkt. 1, Compl. ¶ 20. According to Plaintiffs, the label's statement that "glyphosate targets an enzyme found in plants but not in people or their pets" is wrong because glyphosate (Roundup®'s active ingredient) "targets" an enzyme in "*gut bacteria*" and that when people eat glyphosate, allegedly through their diets, glyphosate attacks gut bacteria, causing a parade of horrors ranging from Crohn's disease to renal failure. (*Id.* ¶¶ 20, 21) Not claiming any of these catastrophes befell them personally, Plaintiffs make a single claim of false advertising under § 17500, seeking "damages" and to enjoin the label.

Accepting Plaintiffs' fantastic allegations as true, as is required on a motion to dismiss, the Complaint should be dismissed in its entirely for several independent reasons. ***First, Plaintiffs' request for an injunction is expressly preempted by federal law***. The Federal Insecticide Fungicide and Rodenticide Act ("FIFRA") tasks the U.S. Environmental Protection Agency ("EPA") with the responsibility of determining whether a pesticide label, such as Roundup®, is "misbranded." FIFRA contains an express preemption clause barring any state rule "in addition to or different from" FIFRA's. 7 U.S.C. § 136v(b). Here, the EPA approved, under federal law, the very label Plaintiffs seek to enjoin under state law. Plaintiffs' attempt to obtain a state-law injunction against the EPA-approved label would usurp the regulatory authority that Congress bestowed on the EPA.

***Second, Plaintiffs' claim presents the exact situation where a court of equity should abstain from issuing an injunction***. "Judicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007). Here, the Court should decline to assume the regulatory mantle of the EPA, who, in their

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

considerable scientific judgment, verified the accuracy of Monsanto's label before it was marketed.

*Third, as Plaintiffs well know or should have known before filing this action, the California Supreme Court has held for decades that a private plaintiff cannot seek damages under § 17500.* *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976). None are available. The only possible remedy is equitable, which means this case is really about Plaintiffs' attempt to *enjoin a label* approved by regulators whose appointed function was to review that label for its scientific accuracy.

*Fourth, Plaintiffs have failed to plead even the most basic facts to establish standing to bring their claim.* Proposition 64, enacted by California's voters to curb abusive litigation like this case, requires a showing that the § 17500 plaintiff "has suffered injury in fact and has lost money or property as a result of a violation of this chapter." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011) (quoting Cal. Bus. Prof. Code § 17535, as amended by Prop. 64, § 5). That means "'a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct....'" *Id.* at 888 (citing *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009). Here, Plaintiffs have not alleged they even *read* the Roundup® bottle before purchasing that product, much less "*lost money*" based on the complained-of statement.

*Fifth, to the extent that the Court even reaches the merits of Plaintiffs' claim, it should be dismissed for failure to state a "claim to relief that is plausible on its face."* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). False advertising under § 17500 requires a showing that a statement is "likely to deceive" a "reasonable consumer," which "implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Further, a claim under § 17500 requires that the complained of statement "be 'material' to a customer's evaluation of a product." *Brod v. Sioux Honey*, 927 F.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Supp. 2d 811, 830 (N.D. Cal. 2013) (emphasis added).  The Complaint fails for both reasons.

Plaintiffs' allegation that the Roundup® label is "false" is based on an absurd misinterpretation of the label.  The label makes the undisputedly accurate claim that Roundup® works by targeting a plant enzyme, which is undisputedly *not* produced by animals and *not* in animal cells.  The label says nothing about "gut bacteria," and Plaintiffs have pleaded no facts to plausibly suggest any "reasonable consumer" would misinterpret the Roundup® label as talking about what enzymes may be produced by the bacteria living in one's guts.  Further, the Complaint does not allege that a bottle of Roundup® would ever "target" "gut bacteria" through any reasonable use of that product.  And none of the Complaint's activist allegations about glyphosate *in the commercial food supply* has anything to do with a Roundup® bottle indicated for *use in a lawn or garden*.

Further, the Complaint makes no allegation that targeting of gut bacterial enzymes plays any material role in the purchasing decisions of reasonable consumers, even if one were to unreasonably misinterpret the label in the way Plaintiffs do.  Nothing in the Complaint alleges consumers would have any misapprehensions about Roundup's® putative effect on "gut bacteria," or that consumers make purchasing decisions about a backyard weedkiller based on concerns about residual glyphosate in the commercial food supply.  For all of these reasons, the Complaint falls far short of stating any plausible claim for relief.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# FACTUAL BACKGROUND

## A.    The Complaint

On April 20, 2015, plaintiffs Elvis Mirzaie, Edison Mirzaie, and Romi Mirzaie ("Plaintiffs" or "Mirzaie") commenced this putative class action by filing a complaint in the Superior Court of the State of California for the County of Los Angeles (the "Complaint").   The Complaint was served on May 15, 2015.   On June 9, 2015, Monsanto filed papers removing the action to this Court pursuant to 28 U.S.C. §§ 1441 & 1332(d).  *See* Dkt. 1.

The Complaint purports to assert a single cause of action against Monsanto for violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.  *See* Dkt. 1, Compl. at ¶ 16.  It seeks to certify a statewide class consisting of "all persons who purchased Roundup, or Roundup-related products, in California, at any time during the last four years," and seeks preliminary and permanent injunctions, money damages, punitive damages, and attorneys' fees and costs.  *Id.* at ¶ 7 and Prayer for Relief.

The putative basis for Plaintiffs' FAL claim is that a phrase appearing on the Roundup® consumer label—"*Glyphosate targets an enzyme found in plants but not in people or pets*"—is false and misleading.   Glyphosate is the active ingredient in Roundup®.  *Id.* at ¶¶ 20, 38.  According to Plaintiffs, glyphosate "targets" the enzyme EPSP synthase, which is found in plants.  *Id.* at ¶ 19.  Plaintiffs do not claim that people or pets produce EPSP synthase, or that EPSP synthase is in animal cells, or that EPSP synthase performs any function whatsoever in animals.   Instead, Plaintiffs allege that glyphosate supposedly "targets" EPSP synthase enzymes in "gut bacteria," and because "gut bacteria" are "found in" people and pets, glyphosate targets EPSP synthase "found in" people and their pets.  *Id.* at 20.

Plaintiffs do not allege any basis for how glyphosate would "target" "gut bacteria" if one used Roundup® in accordance with the label's directions by spraying weeds in one's lawn or garden.   Rather, Plaintiffs claim that glyphosate is allegedly

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

present in the *food supply* due to farming practices, *id.* at ¶ 32, "ubiquitous," *id.* at ¶ 29, and that people consume glyphosate *in their diets*, *id.* at ¶¶ 26, 31.  According to Plaintiffs, when people consume glyphosate, it "targets" EPSP synthase in their "gut bacteria," causing a cascade of consequences, from "bowel problems," "ulcers," "depression," "allergies," and "gluten intolerance," to "liver disease," "Alzheimer's," "autism," "Crohn's disease," and "renal failure," *id.* at ¶ 34—***none of which Plaintiffs actually claim to have suffered***.

Plaintiffs make no effort to explain how their delusional allegations about glyphosate in the commercial food supply have anything to do with a bottle of Roundup® for use in a lawn and garden, or anything to do with consumer purchasing practices for that backyard weedkiller.

Plaintiffs claim that they purchased a Roundup® bottle containing the complained-of statement, *id.* at ¶ 38, but do not identify when this transaction supposedly took place, or provide any details about that transaction.  Plaintiffs do not allege that they had even *read* the Roundup® label before making their supposed purchase, or that they had seen the statement on the label, or that they were induced in any way by the statement on the label to make their purchase.  Plaintiffs also do not claim to have lost money based on the statement on the label, or that they suffered any type of injury because of it.

Nevertheless, Plaintiffs seek "money damages," "punitive and exemplary damages" and a "preliminary and permanent injunction prohibiting [Monsanto] from advertising that Roundup, and/or glyphosate, targets and/or inhibits enzymes '*not found in people or pets.*'"  *Id.* at Prayer for Relief (emphasis in original).

## B. The EPA's Oversight of Glyphosate And Its Marketing

The United States Environmental Protection Agency ("EPA") regulates glyphosate.  *See id.* ¶ 28.  Glyphosate has been registered by the EPA since 1974, including reregistration in 1993.  (*See* Ex. 1, Reregistration Eligibility Decision (RED): Glyphosate; EPA-738-R-93-014; U.S. Environmental Protection Agency,

5

Office of Prevention, Pesticides, and Toxic Substances, Office of Pesticide Programs, U.S. Government Printing Office: Washington, DC, 1993, http://www.epa.gov/pesticides/reregistration/REDs/old_reds/glyphosate.pdf.)[1]   In the process of registering a pesticide, the EPA also approves pesticide labels.  *See* 7 U.S.C. § 136c(c)(5).   The EPA has concluded that the use of glyphosate-based herbicides in accordance with label directions would "*not pose unreasonable risks or adverse effects to humans or the environment*."  (Ex. 1 at 14).  (emphasis added).

The label at issue in this case is registered as EPA Reg. No. 71995-33.  *See* Dkt. 1, Compl., Ex. 1.  On February 28, 2008, the EPA found that the labeling at issue "is acceptable" and approved the label for commercial use.  (Ex. 2, Feb. 28, 2008 Approval at 1, 17, http://www3.epa.gov/pesticides/chem_search/ppls/071995-00033-20080228.pdf).

## ARGUMENT

## I.   PLAINTIFFS' CLAIM FOR AN INJUNCTION AGAINST THE EPA-APPROVED ROUNDUP® LABEL IS EXPRESSLY PREEMPTED BY FIFRA

Plaintiffs' proposed remedy is to enjoin the Roundup® label, but that claim is expressly preempted under federal law.  Under FIFRA, the EPA exhaustively reviews pesticide labels, such as Roundup®, before they are sold, to determine whether the label is "misbranded."  *See* 40 C.F.R. § 152.112(f) (2009); 40 C.F.R. § 156.10(a)(5) (2009).  Here, the EPA reviewed *the very statement* that Plaintiffs claim is "false," and found it was accurate and permissible for inclusion on the Roundup® label.  (Ex. 2 at 1, 17).  Because FIFRA preempts any labeling requirement "in addition to or

---

[1] "On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings."  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *see also Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal. July, 23, 2010) (in deciding a motion to dismiss, the court took judicial notice of documents from the Office of Thrift Supervision and the FDIC that appeared on those government agencies' websites. "Judicial notice may be taken of documents available on government websites...Public records and government documents are generally considered not to be subject to reasonable dispute. This includes public records and government documents available from reliable sources on the Internet.")

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

different from" FIFRA's, 7 U.S.C. § 136v(b), as a matter of law, Plaintiffs cannot obtain an injunction against the EPA-approved label.

## A. FIFRA Expressly Precludes Any State Labeling Requirements That Are "In Addition To or Different" From FIFRA's

Under FIFRA, all pesticides sold in the United States must be registered with the EPA. *See* 7 U.S.C. § 136a(a). In the registration application, manufacturers submit draft label language addressing a number of issues, including the ingredients, directions for use, and any claims it intends to make on the label. 40 C.F.R. § 152.50 (2009). Prior to registering a pesticide, the EPA must find that its labeling complies with FIFRA's requirements. § 136a(c)(5)(B). FIFRA's requirements include a requirement that the pesticide is not "misbranded," 40 C.F.R. § 152.112(f) (2009). *See Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 438 (2005) (discussing these requirements); *Etchevarry v. Tri-Ag Serv. Inc.*, 993 P.2d 366, 368 (Cal. 2000) (same). A pesticide label is misbranded if it is "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A); 40 C.F.R. § 156.10(a)(5)(ii) (2009).

To ensure the uniformity and the supremacy of the EPA's role in pesticide labeling, FIFRA provides that a state "*shall not impose* or continue in effect *any* requirements for *labeling ... in addition to or different from* those required under this subchapter." 7 U.S.C. § 136v(b) (emphasis added). In *Bates*, the Supreme Court articulated a two-part test for determining when FIFRA preempts state requirements:

> For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement "*for labeling or packaging*; " rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "*in addition to or different from those required under this subchapter*." A state regulation requiring the word "poison" to appear in red letters, for instance, would not be pre-empted if an EPA regulation imposed the *same requirement*.

7

*Id.* at 444 (emphasis added).  Thus, the California Department of Pesticide Regulation recognizes: "In the field of pesticides, FIFRA clearly states that only the federal government has authority over pesticide labeling.  In other words, no state or local government can dictate what is on a pesticide product label."  (Ex. 3, California Department of Pesticide Regulation Guide for Pesticide Registrants at 4, http://www.cdpr.ca.gov/docs/registration/manual/guidance.pdf.)

### B. Plaintiffs' Desired Injunction Would Impose A Labeling Requirement "In Addition To or Different" From EPA's Requirements Under FIFRA

Plaintiffs' claim for an injunction is clearly preempted by § 136v(b).  *First*, the proposed injunction would impose a requirement for labeling or packaging.  The Complaint concerns the accuracy of a statement on the Roundup® consumer bottle—*its label*—and attaches a photograph of that label as Exhibit A.  There is no question that entering an injunction requiring the label be changed would impose a state "labeling" requirement.[2]  *Second*, that labeling requirement would be "in addition to or different from" what is required by federal law.  The EPA, applying federal law and its own regulations under FIFRA, has specifically found that Roundup® is *not misbranded*, and that the complained-of statement regarding Roundup® is accurate.  Plaintiffs would enjoin that very label, and thus impose a different labeling standard than applied by the EPA under federal law.

An injunction against an EPA-approved label is the clearest example of preempted activity under FIFRA.  Congress appointed the EPA to make the determination of appropriate labeling.  Plaintiffs would seek to trump the EPA's determination under a state statute.  If that were allowed, then EPA-approved labels would be subject to *ad hoc* revision in fifty different states, and the EPA would be

---

[2] FIFRA defines a label as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers."  7 U.S.C. § 136(p)(1).  FIFRA defines "labeling" as "all labels and all other written, printed, or graphic matter (A) accompanying the pesticide or device at any time; or (B) to which reference is made on the label or in literature accompanying the pesticide or device . . . ."  7 U.S.C. § 136(p)(2).  Written words on the consumer bottle unquestionably qualify.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

subservient to judges applying state law, imposing their own will in lieu of the scientific judgment that Congress entrusted to the EPA.  The labeling uniformity that Congress intended would by thwarted.

While the Supreme Court did not address the prospect of state-law injunctions against EPA-approved labels in *Bates*, the Ninth Circuit addressed that very issue in a decision issued before *Bates*, which remains controlling.  *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199 (9th Cir. 2002).  In *Nathan Kimmel*, the plaintiff sought injunctive relief under § 17200, requesting that DowElanco, the pesticide manufacturer, be *ordered to change its label* to permit the use of the plaintiff's polymer bag during fumigations.  *Id.* at 1203.  The Ninth Circuit held that "*an injunction imposed against a manufacturer to change its label would represent a state-mandated labeling requirement and would therefore be preempted*."  *Id.* (emphasis added).  Therefore, the Ninth Circuit affirmed dismissal of the claim.  *Id.*[3]

Since *Bates*, district courts across the country have likewise found the application of consumer fraud laws to be preempted where they impose labeling requirements.  In *Smith v. Hartz Mountain Corp.*, 2012 WL 5451726, at *4 (N.D. Ohio Nov. 7, 2012), the Court dismissed a consumer fraud claim under *Bates*, holding "any claim that asserts Hartz is liable to Plaintiffs for producing a product label in a manner consistent with the EPA's requirements seeks to impose an additional or different labeling requirement, and is preempted by FIFRA."  In *DJ Colman, Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055 (D.N.D. 2010), the court held a cause of action under North Dakota's Consumer Fraud Act to be preempted under *Bates* where the North Dakota Act was "not genuinely equivalent to FIFRA's obligation under 7 U.S.C. § 136(q)(1)(A)."  In *Wilgus v. Hartz Mountain Corp.*, 2013 WL 653707, at *5

---

[3]  The California Court of Appeals has reached a similar conclusion.  *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 796 (2002) ("Although FIFRA does not prescribe the exact content of a label, manufacturers are not free to create labels in any manner they choose; instead, the EPA approves the label only after careful and rigorous review of the product data and the draft label.  Thus, when a claim is premised ultimately on the inadequacy of the product label, it is preempted.")

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(N.D. Ind. Feb. 19, 2013), the court dismissed labeling claims brought under Indiana Consumer Fraud Act, since "challenges to the adequacy of a pesticide's label or warning are preempted by FIFRA if they would require information different from what FIFRA requires." *Cf. Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 261-62 (D. N.J. 2011) (explaining, in California UCL case, "[i]f Plaintiffs' claims amount to labeling requirements, they will be preempted by FIFRA," but finding no preemption because the claims at issue did not seek to alter a label).

In *Meaunrit v. The Pinnacle Foods Group, LLC*, the Northern District of California addressed a similar issue in a case arising under a USDA labeling statute. 2010 WL 1838715 (N.D. Cal. May 5, 2010). The plaintiffs alleged that the labels on the defendant's pot pies were false and misleading, but the court found those claims preempted. The court observed that, as here, "the USDA has reviewed the labels, considered whether they were false or misleading and approved of them." *Id.* at *7. "To allow a jury to pass judgment on Defendant's labels, notwithstanding the USDA's approval, would disrupt the federal regulatory scheme." *Id.* Thus, the court dismissed the complaint. *Id.*

Here, Congress did not appoint Plaintiffs or their lawyers to be the watchdogs of federal pesticide labeling. It reserved that role for the EPA, which reviewed and confirmed the accuracy of Monsanto's labeling before the statement Plaintiffs challenge ever appeared on the Roundup® label. Through the Complaint, Plaintiffs attempt to substitute their own ill-informed opinion for the considered scientific judgment of the EPA. The proposed injunction is an attempt to impose an unlawful state labeling requirement preempted by federal law and, therefore, should be dismissed.

## II. THE DISTRICT COURT SHOULD EQUITABLY ABSTAIN FROM ENJOINING AN EPA-APPROVED PRODUCT LABEL

Even if Plaintiffs' claim for an injunction is not preempted for some reason, the Court should abstain from entertaining it. "It is well-established that a court of equity

10

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  will abstain from employing the remedies available under the unfair competition law

2  in appropriate cases." *Shamsian v. Dep't of Conservation*, 136 Cal. App. 4th 621, 641

3  (2006); *see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1297

4  (2007) ("Because these remedies are equitable in nature, under the doctrine of judicial

5  abstention, courts have the discretion to abstain from employing them.").   In

6  particular, "[j]udicial abstention is appropriate when granting the requested relief

7  would require a trial court to assume the functions of an administrative agency, or to

8  interfere with the functions of an administrative agency." *Id.* at 1298. "Where a court

9  abstains under the UCL, dismissal with prejudice is appropriate." *Reudy v. Clear*

10 *Channel Outdoor, Inc.*, 428 Fed. App'x 774 (9th Cir. 2011).

11     Here, the EPA is tasked with the responsibility of determining whether

12 pesticides are appropriately labeled before they are marketed.  With its considerable

13 expertise, the EPA has exercised that function and determined that Roundup® was not

14 misbranded, and that Plaintiffs' complained-of statement—regarding the plant enzyme

15 that glyphosate targets—is scientifically accurate.  The court should not interfere with

16 the functions of EPA in an area of their technical expertise by second guessing their

17 conclusion, especially where California's own experts will not second guess EPA.

18 Ex. 3 at 4; *see Alvarado*, 153 Cal. App. 4th at 1303 ("Adjudicating this class action

19 controversy would require the trial court to assume general regulatory powers over the

20 health care industry through the guise of enforcing the UCL, a task for which the

21 courts are not well-equipped.")[4]

22

23

24 ─────────────────
[4] *Shamsian*, 136 Cal. App. 4th at 642 (dismissing UCL claim for injunction where
claim would interfere with department of conservation's implementation of recycling
25 program); *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal. App. 4th 1284,
1302 (1993) (holding UCL claim "having a purely regulatory import" "improperly
26 invades the powers that the Legislature entrusted to the Department of
Corporations."); *see also Sandoz Pharm. Corp., Inc. v. Richardson-Vicks, Inc.*, 902
27 F.2d 222, 230 (3d Cir. 1990) (whether an ingredient was "active" or "inactive" was
issue for FDA, not the courts); *Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at
28 *4 (D.N.J. June 15, 2010) (whether high fructose corn syrup was properly deemed
"natural" was an issue for FDA, not the courts)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    If Plaintiffs have a grievance against anyone, it is the EPA—not Monsanto.

2    After all, it was the EPA who approved Monsanto's label, finding that the statement

3    Plaintiffs claim is false and misleading was not, in fact, "misbranded."  In *Nathan*

4    *Kimmel*, the Ninth Circuit observed that in such a circumstance, the plaintiff "may be

5    able to bring an administrative action within the EPA or might sue the EPA itself

6    under the Administrative Procedures Act."  275 F.3d at 1208.  Thus, equitable

7    abstention "does not leave [the] aggrieved party without an avenue, where

8    appropriate, to seek redress."  *Id*.  It does, however, dictate that any complaint be

9    brought at the EPA or against the EPA (under federal law with appropriate standards

10   for administrative deference), rather than against the pesticide manufacturer seeking

11   an injunction under state law.

## III.   PLAINTIFFS' PUTATIVE "DAMAGES" CLAIM DOES NOT EXIST

13   Section 17500—the sole basis for this lawsuit—is itself a criminal provision,

14   making it a misdemeanor to engage in false advertising.  The only private right of

15   action to enforce § 17500 is set forth in § 17535.  In *Chern v. Bank of Am.*, the

16   California Supreme Court held that "a cause of action to recover damages for false or

17   misleading statements (Bus. & Prof. Code, § 17500)" was "properly dismissed,"

18   because "[t]he applicable statutes do not authorize recovery of damages by private

19   individuals."  15 Cal. 3d 866, 875 (1976).  "Rather, *private relief is limited to the*

20   *filing of actions for an injunction* (id., § 17535); and civil penalties are recoverable

21   only by specified public officers (id., §§ 17535.5, 17536)."  *Id*. (emphasis added).

22   Unsurprisingly, courts have unanimously followed the California Supreme

23   Court's ruling disallowing private damages claims.  *See*, *e.g.*, *Little Oil Co. v. Atlantic*

24   *Richfield Co.*, 852 F.2d 441, 445 (9th Cir. 1988) (upholding dismissal of claim for

25   damages under § 17500); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D.

26   Cal. 1998) (holding, under § 17500, "private remedies are limited to equitable relief,

27   and civil penalties are recoverable only by specified public officers"); *Abiola v. ESA*

28   *Mgmt., LLC*,  2014 WL 988928, at *7 (N.D. Cal. Mar. 3, 2014) (same).

Further, the text of § 17535 is "nearly identical" to Bus. & Prof Code §§ 17203-04, which set forth a private cause of action under California's Unfair Competition Law ("UCL"). *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). The California Supreme Court has interpreted those two provisions to be interchangeable, and thus, interpretive decisions under the UCL are equally applicable to the FAL. *Id.* As with FAL claims, the California Supreme Court has repeatedly held that private remedies under the UCL are limited to injunctive relief, and that damages are forbidden. *Id.*; *see also Korea Supply Co. v. Lockheed Martin Corp.* 63 P.3d 937, 943 (Cal. 2003) ("A UCL action is equitable in nature; damages cannot be recovered.") (emphasis added); *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1401 (9th Cir. 1989) (same).[5]

## IV.   PLAINTIFFS LACK STANDING TO SUE UNDER THE FAL

To minimize abusive, "shakedown" litigation under the FAL, in the November 2004 general election, the California voters enacted Proposition 64. *See Kwikset Corp.*, 246 P.3d at 881, 884. Proposition 64 "materially curtailed the universe of those who may enforce" the FAL. *Id.* at 884. "[W]here once 'any person acting for the interests of itself, its members or the general public' (§ 17535, as amended by Stats. 1972, ch. 711, § 3, p. 1300) could sue, now standing is limited to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter' (§ 17535, as amended by Prop. 64, § 5)." *Kwikset Corp.*, 246 P.3d at 884.

"[I]n sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered

---

[5] Because damages are forbidden in actions under the UCL and FAL, it necessarily follows that punitive damages are also forbidden. *See, e.g.*, *Almasi v. Equilon Enterprises, LLC*, 2012 WL 3945528, at *11 (N.D. Cal. Sept. 10, 2012) ("Equilon correctly argues that punitive damages are not recoverable under the UCL because the available remedies under the UCL are limited to injunctive relief and restitution.") (citing *Korea Supply*).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

such harm." *Id.* at 886. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 887. A plaintiff proceeding on a false advertising claim must "demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Id.* at 888. "Consequently, 'a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct....'" *Id.* (citing *In re Tobacco II Cases*, 207 P.3d 20).[6]

To survive a motion to dismiss, Plaintiffs must have made an actual decision to purchase Roundup® based on their actual reliance on a statement that they actually read at or before the purchase. *See Kane*, 973 F. Supp. 2d at 1133-35 (dismissing complaint where plaintiff failed to allege facts showing reliance on allegedly false statements).[7] In this case, the Complaint does not come close to pleading an actual injury or lost money, or that Plaintiffs actually relied on any misrepresentation that was the "immediate cause" of an injury. The Complaint contains no fact whatsoever about the reasons why Plaintiffs purchased Roundup®. Far from pleading reliance "with particularity," the complaint does not claim that the Plaintiffs had even read the Roundup® label before purchasing Roundup®; that they were even aware of the statement on the Roundup® label that they now challenge; or that they made any purchasing decision based on the statement. Rather, the Complaint alleges:

---

[6] Further, such allegations must "meet the heightened pleading requirement under Rule 9(b), wherein a plaintiff must allege "the who, what, when, where, and how" of the misconduct charged." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1135 (N.D. Cal. 2014) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[7] *See also Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) ("In the complaint, plaintiff does not allege that prior to purchasing the products, he read the ingredients labels and saw the term 'evaporated cane juice.' Therefore, plaintiff has failed to allege sufficient facts establishing that he relied on the alleged misbranding in purchasing the products.") (dismissing complaint); *McCrary v. Elations Co.*, LLC, 2013 WL 6403073, at *8 (C.D. Cal. July, 12, 2013) (finding plaintiff lacked standing where the complaint "does not allege that he looked at or relied on anything on Defendant's website before purchasing Elations.").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

> When they purchased Roundup, Plaintiffs *believed* that glyphosate targets and kills only the weeds in our backyards, but Plaintiffs now *know the real world truth*, i.e., that glyphosate also targets and kills the "weeds" in our digestive systems, which contain beneficial gut bacteria that our bodies require for proper digestion metabolism, and healthy immune system function.

Dkt. 1, Compl. ¶ 38 (emphasis added).  The assertion about what plaintiffs "believed" at the time of purchase—divorced from any facts to establish reliance on any statement on the label—is irrelevant.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Complaint also does not come close to stating a cause of action on the merits.  A district court should grant a motion to dismiss if plaintiffs have not pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  Here, the complaint fails to state a claim under the FAL for two related reasons.  First, the facts pleaded in the Complaint do not plausibly show that a reasonable consumer would likely be misled by the EPA-approved Roundup® label.  Second, the Complaint does not plead any facts showing that the complained-of statement would play a "material" role in a reasonable consumer's decision to purchase Roundup®.

### A.   The Complaint Does Not Plausibly Allege That a Consumer is Likely to be Deceived By the EPA-Approved Roundup® Label

The FAL prohibits "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500.  The linchpin of an action for false advertising is whether a statement in advertising is "likely to deceive" the consumer.  *Lavie*, 105 Cal. App. 4th at 508.  In assessing that question, "[a] *reasonable consumer standard* applies to a false advertising claim."  *Id.* at 506 (emphasis added).  "'Likely to

15

deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers *viewing it in an unreasonable manner*." *Id.* at 508 (emphasis added). "Rather, the phrase indicates that the ad is such that it is *probable* that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably in the circumstances*, could be *misled*." *Id.* (emphasis added).

While the issue of consumer deception is typically a factual question, it is amenable for resolution on a motion to dismiss where the well-pleaded facts of the complaint, taken as true, do not establish a plausible case that a reasonable consumer would be deceived. *E.g., Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995); *In re Sony Gaming Networks*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) (dismissing allegations that consumers were deceived by claims of network connectivity for Playstation® video games, since Sony did not claim that videogame consoles "would 'always' be able to access the internet and/or connect to other online services.").

Here, Plaintiffs' complaint does not plausibly allege that the statement on the EPA-approved Roundup® label—"glyphosate targets an enzyme found in plants but not in people or pets"—is likely to deceive consumers. Plaintiffs admit that the plant enzyme targeted by glyphosate is EPSP synthase. Dkt. 1, Compl. ¶ 8(a). Plaintiffs do not claim that EPSP synthase is produced by people or pets; or that it is located in the cells of people or pets; or that it performs any function in people or pets. They do not make such allegations, because they cannot—the label's statement is true, which is why the EPA approved it. Because the enzyme Roundup® targets does not exist in animals, if one were to accidentally spray Roundup® on one's hand while gardening, one's hand would not wither and die like a broadleaf weed. Plaintiffs do not claim otherwise.

Rather, the Complaint contends that the statement is "false" based solely on the absurdity that a consumer would misinterpret the phrase "glyphosate targets an enzyme found in plants but not in people or pets" as talking about enzymatic targeting

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  in "gut bacteria."   Dkt. 1, Compl. ¶ 20.   According to the Complaint, glyphosate

2  "targets" the EPSP synthase enzymes in "gut bacteria," and because "gut bacteria"

3  exist "in" people and pets, glyphosate targets EPSP synthase "in" people and their

4  pets.   *Id*.   That blatant wordplay does not state a plausible claim of consumer

5  confusion.

6      "In order to be deceived, members of the public must have had an expectation

7  or an assumption about" the matter in question.   *Bardin v. DaimlerChrysler Corp.*,

8  136 Cal. App. 4th 1255, 1275 (2008).   The Complaint does not plead that a reasonable

9  consumer, reading the complained-of statement on the label, would believe that

10  statement is talking about "gut bacteria," or would have any expectations,

11  assumptions, or misconceptions about "gut bacteria" based on that statement.

12      Nor is there anything in the label that remotely would cause a misapprehension

13  about gut bacteria.   The distinction that the label draws is that glyphosate targets an

14  enzyme found in plants and not in people and pets.   It says nothing about "gut

15  bacteria" and makes no claims one way or the other about them.   It is simply absurd to

16  suggest a reasonable consumer, reading the Roundup® label, would be misled into

17  believing that the statement has anything to do with microbes in one's intestines—

18  which is presumably why the Complaint itself does not even claim a reasonable

19  consumer would be confused.   *See Lavie*, 105 Cal. App. 4th at 507 ("Perhaps a few

20  misguided souls believe, for example, that all 'Danish pastry' is made in Denmark.   Is

21  it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in

22  this country?   Of course not.   A representation does not become 'false and deceptive'

23  merely because it will be unreasonably misunderstood by an insignificant and

24  unrepresentative segment of the class of persons to whom the representation is

25  addressed.").

26      Even under their own absurd misinterpretation of the Roundup® label,

27  Plaintiffs fail to plead any facts to support their claim that the statement is either false

28  or would mislead consumers.   To support their claims, Plaintiffs would have to plead

facts, with particularity, that the Roundup® consumer product actually "targets" an enzyme in "gut bacteria." But the Complaint does not even allege how the Roundup® product in question, through any reasonable use, would even expose "gut bacteria" to glyphosate. After all, a reasonable consumer is going to be spraying the product on unwanted weeds as directed by the label—not drinking it.

The only allegations in the Complaint about glyphosate "targeting" "gut bacteria" have nothing to do with the consumer Roundup® label or the reasonable use of that product. Plaintiffs assert, for example, that glyphosate used by farmers can accumulate in genetically modified crops. Dkt. 1, Compl. ¶ 26. If true, so what? Glyphosate accumulation in crops would have nothing to do with the product at issue, which is indicated for lawn and garden use, not for spraying over crops. *See id.* ¶ 38. Plaintiffs also suggest that farmers spray their crops with glyphosate to "ripen" them, leaving residues that can be consumed. *Id.* ¶ 27. That is also irrelevant. The consumer Roundup® bottle is not indicated for spraying crops to "ripen" them; the label expressly warns that "if desirable plants are accidentally sprayed, rinse off immediately with water." Ex. 4 at 7.[8] In short, the Complaint makes no allegation for how Roundup® "targeting" "gut bacteria" would ever be a concern for any reasonable consumer in purchasing that consumer product.

In the alternative, the Complaint halfheartedly claims that the Roundup® label is misleading in two other ways, *see* Dkt. 1, Compl., ¶¶ 41(i), 41(ii), which it does not meaningfully explain.

First, Plaintiffs say that the use of the indefinite article "an" in the phrase "glyphosate targets an enzyme found in plants but not in people or pets" is "false"

---

[8] Exhibit 4 is the full label for the Roundup Sure Shot product, which has the same EPA registration number as the partial, illegible bottle label presented as Exhibit 1 to the Complaint. In deciding a motion to dismiss, the court may consider "documents specifically identified in the complaint whose authenticity is not questioned by parties… [and] the court may consider the full text of those documents even when the complaint quotes only selected portions." *Ewing v. Superior Court of California*, 2015 WL 1119407, at *3 (S.D. Cal. Mar. 11, 2015).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  because glyphosate putatively "also inhibits production of other plant and animal

2  'enzymes'—plural, not singular." *Id.* at ¶ 41(i).  The Complaint fails to identify any

3  other plant or animal enzymes that Roundup® inhibits, and it does not plead that a

4  reasonable consumer would be misled in any way by the use of an indefinite article.

5  Nor does the Complaint say how or why the inhibition of multiple enzymes, if true,

6  would play any role in any consumer purchasing decision.  Thus, the allegation does

7  not state any claim for deceptive advertising under the dictates of Federal Rule of

8  Civil Procedure 9(b).

9      Second, Plaintiffs claim that the use of the word "target" is false, because

10  "glyphosate is a 'non-selective' weedkiller that kills indiscriminately; in other words,

11  it 'targets' nothing."  Compl., ¶ 41(ii).  But a different paragraph in the Complaint

12  says the exact opposite:  "Which enzyme does Roundup target?  Roundup targets the

13  enzyme, EPSP synthase."  *Id.* ¶ 8(a).  Plaintiffs cannot state a claim by contradicting

14  their own allegations.

    **B.**    **The Complaint Fails to Plead Any Facts Suggesting that the Complained-Of Statement Would be a Material Factor in the Purchasing Decisions of a Significant Number of Reasonable Consumers**

18      Still further, the Complaint fails to plead any facts that would plausibly suggest

19  that the complained-of statement would be material to any reasonable consumer's

20  purchasing decision.  In order to state a claim under the FAL, "the omission or

21  affirmative misrepresentation contained within an allegedly misleading statement

22  must be 'material' to a customer's evaluation of a product."  *Brod v. Sioux Honey*, 927

23  F. Supp. 2d 811, 830 (N.D. Cal. 2013) (citing *In re Tobacco II Cases*, 207 P.3d 20).

24  "California courts have expressly adopted the 'reasonable consumer' standard for

25  adjudicating the materiality of an alleged misrepresentation."  *Id.* at 831.  "A

26  misrepresentation is judged to be 'material' if 'a reasonable man would attach

27  importance to its existence or nonexistence in determining his choice of action in the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

MONSANTO'S MOTION TO DISMISS
CASE NO. 2:15-CV-04361

transaction in question'...." *In re Tobacco II Cases*, 207 P.3d at 39 (quoting *Engalla v. Permanente Medical Group, Inc.*, 938 P.2d 903 (1997).

In *Brod*, the complaint alleged that the description of the honey product in question was misleading because pollen was removed from it. 927 F. Supp. 2d at 831. But the Northern District found the plaintiff "failed to allege facts giving 'facial plausibility' to his claim that pollen (and its removal from honey) is of material concern to the ordinary consumer," and thus, the complaint provided "no indication that the presence or absence of pollen 'play[s] a substantial part' in the reasonable consumer's decision to purchase honey." Accordingly, the court dismissed the complaint. *Id.*

Here, Plaintiffs have failed to allege facts giving "facial plausibility" to their claim that putative targeting of EPSP synthase in "gut bacteria" is of material concern to the ordinary consumer. The complaint does not plead even the legal conclusion that reasonable consumers would base their purchasing decisions on the complained-of statement—much less factual *particularity* about why concerns about targeting an enzyme in "gut bacteria" would play a "material" factor in a reasonable consumer's purchase of Roundup®.

## **CONCLUSION**

For the foregoing reasons, Monsanto respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: June 15, 2015                 WINSTON & STRAWN LLP


By: /s/ Stephen R. Smerek
     Stephen R. Smerek

Attorneys for Defendant
MONSANTO COMPANY

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543